William Dabney, Appellee, v. Baltimore & Ohio Southwestern Railroad Company, Appellant.

PASSENGER AND CARRIER—*when latter not liable to former for permitting him to leave train in intoxicated condition.* The law does not impose the duty upon a common carrier to place a guard over an intoxicated passenger to prevent him from injuring himself or from placing himself in a place of danger.

Action in case for personal injuries. Appeal from the Circuit Court of Marion county; the Hon. SAMUEL L. DWIGHT, Judge, presiding. Heard in this court at the August term, 1907. Reversed, with finding of facts. Opinion filed March 18, 1908.

KRAMER, KRAMER & CAMBPELL and KAGY & VANDERVORT, for appellant; EDWARD BARTON, of counsel.

CHARLES H. HOLT, for appellee.

MR. JUSTICE MYERS delivered the opinion of the court.

Appellee, by next friend, brought suit in the Circuit Court of Marion county against appellant to recover damages for injuries sustained by being run over by appellant's train at a point between stations, Iuka and Greendale, located on appellant's railroad. The declaration alleges that appellant is a common carrier of passengers, that appellee became a passenger on an east-bound train to be carried from Salem to Iuka, and paid his fare, that appellee was intoxicated by liquor and thereby incapacitated and incapable of caring for himself which was known to the conductor. It is further alleged that appellant failed in its duty to exercise reasonable care to see that appellee alighted in safety from the train at Iuka and negligently carried him past Iuka to Greendale, a flag-station, and then ejected him from the train while he was in a helpless condition, incapable of caring for himself, and negligently placed him on the ground beside the railroad track, and negligently suffered and permitted appellee, in his then helpless condition from intoxication, to wander, unattended, upon the track where he was afterwards run over by another train and sustained injuries resulting in the amputation of his leg.

Appellant filed the plea of general issue, the case was tried by jury, which returned a verdict in favor of appellee for $1,325 damages. A motion for a new trial was denied and judgment rendered on the verdict, from which an appeal was taken to this court.

Numerous errors have been assigned, but in view of

conclusions reached, after a careful examination of the record, it will be unnecessary to consider other than that which challenges the ruling of the trial court in refusing to instruct the jury to find for the defendant. There is no evidence tending to prove the negligence charged or that appellee's injury was the proximate consequence of appellant's failure in any duty owing to appellee as a passenger. It appears that on June 8, 1906, appellee went from Iuka, where he resided, to Salem on appellant's train, arriving at Salem between five and six o'clock in the morning. He visited divers saloons in Salem during the day and drank freely of intoxicating liquors. He went to Centralia about four o'clock, drank more liquor, returned to Salem, drank again, and at about 8:30 in the evening when the east-bound train stopped, he boarded the rear platform of the rear coach, went in and took a seat back near the door. The usual place for receiving and discharging passengers was at the front end of the coach, and the conductor and brakeman were there assisting passengers in getting on and off and did not observe appellee when he got aboard at the rear end. When the conductor came through appellee paid his fare, fifteen cents, from Salem to Iuka. Before the train arrived at Iuka, the brakeman called out the next station as did the conductor from the front door of the coach. The conductor did not know that appellee remained on the train, until, in going through collecting fares, after they left Iuka. He found appellee asleep and challenged him by saying, "I thought you wanted to get off at Iuka?" Appellee said that he did, and when told that the train had passed that station, appellee without complaint or protest, paid his fare from Iuka to Greendale. He was told by the conductor to go to the front of the coach when the train reached Greendale, as that would give him landing on the station platform. At Greendale appellee left the train and went upon the platform without assistance. From there, after the train left, he started to walk back to Iuka on the rail-

way track, and was found next morning, about a mile west of the station lying beside the track with his leg crushed, which evidently had been done by the wheels of a passing train. An empty whiskey bottle was found by his side. It does not appear at what time or by what train he was injured. His recollection of what occurred, intervening the time of his taking the train at Salem for Iuka and when found the next morning, is very imperfect. He testifies that he was drunk and this we may well believe if his statement as to the frequency, quality, and character of liquors consumed during the day, are to be credited. We think it a matter of common knowledge—suspicion at least—that few men, not immune from the effects of intoxicating liquors, could have carried his load with as little apparent difficulty. It was a deplorable accident, most distressing in consequence, but we search the record in vain for any evidence by which appellant can be held responsible for the injury sustained. The general proposition of law upon which this action is based is that the servants of the carrier, when aware of the intoxication of a passenger must give him that degree of attention which consideration for his safety demands, beyond that ordinarily bestowed upon other passengers. In other words, the servants of the carrier, knowing that a passenger is helplessly drunk and incapable of caring for himself may not put him off, compel or permit him to leave the train at a time and place, and under conditions, dangerous to one in his known helpless and irresponsible condition. But the carrier can only be held liable for consequences which could reasonably have been foreseen and expected from the acts of its servants in ejecting the passenger from the train, but it cannot be held to guardianship over him during the period of his intoxication, nor to liability for injuries due to his intoxicated condition and in no way connected with the act of the carrier. The duty of the carrier ends when it has safely landed him in a safe place for one in his known condition. A man

Dabney v. B. & O. S. W. R. R. Co.

may be very drunk without being entitled to special consideration on that account. His intoxication must be in that degree that renders him helpless, unconscious, irresponsible, and it must be known by the servants that he is in such condition, before the law imposes upon the carrier the duty to care for him in any manner different from the treatment accorded other passengers who are sober and sane. In this case, though appellee was drunk and though the servants may be held to have known that fact, there is nothing shown by the evidence, outside of the statement of the appellee himself, that he was in fact helpless, or unconscious or incapable of caring for himself when he left the train, and there is no evidence to charge the servants of appellant with notice of such helpless condition. He boarded and left the train of his own motion and without assistance. He knew and stated his destination, paid his fare, was carried beyond his station while asleep, a not unusual occurrence; again he paid his fare, and with other passengers left the train at Greendale, drunk and staggering it may be, though there is nothing in what he did or said from start to finish, in the presence of the train men, from which it may reasonably be held that they knew him to be in a helpless condition and entitled to special care, under the law invoked. There is not a particle of evidence that he was put off the train, and for this reason the authorities cited by appellee are not analogous in the facts, though, in principle, they support the general proposition of law contended for. Whatever his condition, the appellant was under no duty to carry him beyond Greendale, even if he had objected, which he did not. It was a regular flag-station and platform where trains stopped for the accommodation of passengers. The fact that there was not a depot or agent there might work inconvenience to night passengers, and in bad weather the lack of shelter might cause suffering, which, to one wrongfully ejected, would be an element of damages. But these considerations have no

bearing upon the contentions in this case. It was no part of the train men's duty to leave the train to prevent appellee from his attempted walk back to Iuka, or to accompany him that no injury should result. What more could a personal attendant have done than was done by the witness Henninger, a passenger, who walked part of the way with appellee after they left the train, and at their parting, tried to dissuade him from going home until morning, offering hospitality for the night. Henninger was with appellee, talking with him for upwards of a quarter of an hour, and is positive that he was then in good understanding, that he knew perfectly what he was talking about, where he was, what had happened and what he wanted to do. In such condition of mind and comprehension an attending railroad employe, nor any one else, would have legal right forcibly to restrain his action. A common carrier is not liable for injuries received by a passenger, through his own negligence, even though such a passenger is unconscious and helpless by reason of such intoxication, unless such condition is known to the persons in charge of the train, and in the face of such knowledge such servants allow the passenger to place himself in a dangerous position from which injury results. "The law does not impose the duty on a common carrier to place a guard over such a passenger to prevent him from injuring himself, or placing himself in a place of danger." St. Louis, Alton & T. H. R. R. Co. v. Carr, 47 App. 353. "A carrier of passengers is only liable for the direct and proximate results of the negligence complained of or for those results which can reasonably be anticipated to flow therefrom." I. C. R. R. Co. v. Kerr, 125 App. 363. The case of Hamilton v. Railway Company, 183 Pa. St. 638, is similar in the facts and is in point as to the law. That was an action brought against the carrier for permitting a drunken passenger to get off the train in a dangerous place, after which he wandered onto the track and was killed. The court says: "The negligence

with which the defendant is charged was in putting him (the passenger) off the train at a place of danger. But this danger he entirely escaped and when he got to the station he was as safe as if he had got off there. No negligent action of the company was the proximate cause of his death." From the evidence it must be held, and we so find as facts to be incorporated with the judgment, that the appellant was not guilty of the negligence charged, and that the injury complained of was not the proximate result of any negligence on the part of appellant.

*Reversed, with finding of facts.*