Statement of the Case.
MONROE, J.
Plaintiff alleges that she is the “owner and possessor” of three tracts of land in the parish of Livingston, known as the “Stoppenhagen,” “Stafford,” and “Hodges” tracts, respectively; that she acquired the Stoppenhagen tract under the will of George Colmer and as a result of a iDartition with her sister, Mrs. McQueen, and that Colmer acquired it at a partition sale in the succession of William Stoppenhagen; that she acquired the Stafford tract by purchase from Joseph R. Stafford, the patentee; and that she acquired the Hodges tract by purchase from Abel W. Hodges. She further alleges that the Frost-Johnson Lumber Company claims title to said tracts as derived, through mesne conveyances, as follows:
One Charles Carter, pretending that he had purchased the Stoppenhagen tract from William Stoppenhagen, conveyed it to Charles W. Henry, whose widow and heirs conveyed it to the Eastern Land & Lumber Company, Limited, by which it was conveyed to Nelson W. McLeod, Clarence D. Johnson, and Edwin A. Frost, who conveyed it to the Frost-Johnson Lumber Company.
One Charles J. Fuqua, pretending that his father had purchased the Stafford tract from Thomas Green Davidson, and that the latter had bought it from Joseph R. Stafford, sold said tract to W. H. Howcott, who conveyed it to the Aztec Land Company, by which it was conveyed to the Quaker Realty Company, by which it was sold to the Pennamieh Lumber Company, which sold it to McLeod, Johnson & Frost, who sold it to the Frost-Johnson Lumber Company (the Pennamieh Lumber Company, also asserting title to the same tract as derived from W. H. Howcott, through William W. Frazier).
Mrs. Blargaret Davidson, as natural tu-trix of Thomas Green Davidson, Jr., is said to have purchased the Hodges tract at sheriff’s sale in the succession of Thomas Green Davidson, Sr., and she and Thomas Green Davidson, Jr., sold it to William H. Howcott, who sold it to the Aztec Land Company, by which it was sold to the Quaker Realty Company, which conveyed it to the Pennamieh Lumber Company, which sold it to McLeod, Johnson & Frost, who sold it to the Frost-Johnson Company (the Pennamieh Lumber Company also asserting title to the same tract as derived from W. H. Howcott through William W. Frazier). Plaintiff alleges that the declarations of Carter and Fuqua, as to the origin of their titles, to the Stoppenhagen and Stafford tracts, respectively, are untrue, and that the Hodges tract belonged to her, and was sold, in the succession of Thomas Green Davidson, through error, and she also alleges that the subsequent purchasers of said tracts were aware of the defects in their titles. She alleges that the persons and corporations named are, for the most part domiciled elsewhere, and she prays that all the parties mentioned be cited, through curators ad hoc, or otherwise, and that she have judgment recognizing her “as the owner and possessor of the three tracts of land * * * and quieting her in her ownership and possession of the same”; and decreeing the nullity of the pretended conveyances by Carter and Fuqua, and by the sheriff, and of all subsequent titles based thereon. Most of the parties named as defendants excepted to the citations and to the jurisdiction of the court, ration© person®, and some of them, including the Eastern Land & Lumber Company and the Frost-Johnson Lumber Company, excepted on other grounds, which *545 are recited by the trial judge, in his reasons for the judgment dismissing the suit, as follows, to wit:
“In this case the exception filed, by the Eastern Land & Lumber ‘Co. and Frost-Johnson Lumber Co., * * * to the effect; that plaintiff’s petition combines various causes of action which are entirely unrelated and should not be included in the same; that said petition makes various parties defendants whose interests are, in no way, common, and whose rights cannot be properly adjusted in the same suit; that said petition relates to chains of titles to three separate, distinct tracts of land, in which the various owners, or transferrors, are entirely separate and distinct and have no community of interest whatever, and that the trial of the various causes of action set forth in said petition would be so confusing as to make it impossible, properly, to adjust the various unrelated interests involved in the -matters set forth in the petition, etc.,- came on to be heard, and was heard in due course of law, in these proceedings, and the court holding that said exceptions were well taken, and that the same should be maintained, the court sustained the said exceptions above mentioned, and dismissed the suit in its present form. All other exceptions herein filed are overruled.”
From the judgment so rendered, the plaintiff prosecutes this appeal.
Opinion.
It seems to us clear that, if plaintiff were suing in the same action, Charles Carter, complaining that under pretense of title from Stoppenhagen, he was disturbing her possession of the Stoppenhagen tract; and Fuqua,- complaining that under pretense of title from some one else, he was disturbing her possession of the Stafford tract; and Mrs. Davidson and her ward, complaining that, under still other pretense, they were disturbing her possession of the Hodges tract —each of the defendants might very well complain that he was being made defendant “upon a record, with a large portion of which, and of the case-made by which, he has no connection whatever,” a condition of which, in the old and leading case of Campbell v. Mackey, 1 Mylne & Craig, 603, Lord Cottonham said:
“But what is more familiarly understood by the term 'multifariousness,’ as applied to a bill, is where a party is able to say that he is brought as a defendant upon a record, with a large portion of which and of the case made by which, he has no connection.”
Of course, it does not improve the situation in the instant case that, instead of having but the three, above named, we have more than a dozen defendants, who, for some purposes, are divided into three groups, and, for others, like the “gow chrom,” will be fighting for their own hands. The widow and heirs of Charles W. Henry appear to have no connection whatever with the Stafford and Hodges tracts, and the parties through whom the titles to those tracts have passed have no connection with the title to the Stoppenhagen tract, which is said to have been derived from the widow and heirs of Henry. On the other hand, Mrs. Margaret Davidson, tutrix, and her. ward, for whom, she is said to have purchased the Hodges tract, at a sale in the succession of Thomas Green Davidson, have no concern with the validity of the title of the Stafford tract, as acquired and transferred by Chas. J. Fuqua. Whilst, therefore, for some purposes (though not by the original plaintiff in a pet-itory action), those who are parties or privies to either one, or to all, of the titles, might be brought into court in the same suit; to bring them all into a litigation which affects all the titles, without regard to their relation to them, for the purposes of issues with which they have no concern would be a hardship, would result in confusion and embarrassment, and would be inconsistent with settled jurisdiction, not only in this state, but elsewhere. Waldo v. Angomar, 12 La. Ann. 74; Mavor v. Armant, 14 La. Ann. 181; Leverich v. Adams, 15 La. Ann. 310; Surgi v. Matthews, 24 La. Ann. 614; Cane v. Sewall, 34 La. Ann. 196; Riggs v. Bell et al., 39 La. Ann. 1030, 3 South. 183; Neugass v. City et al., 43 La. Ann. 82, 9 South. 25.
*547 In Gill v. City of Lake Charles, 119 La. 18, 43 South. 897, it was held that a number of taxpayers may unite in the same suit to prevent the illegal disposition of municipal property, and that property holders may join in one suit to prevent an obstruction to a street, and to contest the right of the municipality to grant to a railroad company a right of way along a so-called street, which they assert is not a street, but private property belonging to them. But the basis of that ruling was that the plaintiffs had a common interest, were complaining of the same things, were presenting the same issues, and were seeking the same remedy. But, that the ruling in question affords no support to the plaintiff in the instant case is apparent from the first paragraph of the syllabus, which'reads:
“Our Code of Practice makes no provision for determining when parties may, or may not, be joined either as plaintiffs or defendants. We have to be guided in that regard by the well-settled rules of pleading- as found in the books of common law, according to which a large discretion is left to the court; the aim being to avoid a multiplicity of suits, while not permitting parties to be joined who have not a common interest, or where the defendants would be embarrassed in their defense, or delays would be caused or complications arise, in connection with costs, or otherwise.”
Counsel for plaintiff suggest, at the close of their brief, that:
“If the court holds that plaintiff can proceed on her petition as filed, as to one of the tracts of land described therein, she, in that event, prays that the judgment appealed' from be amended, [the ease] remanded, and plaintiff allowed to proceed, as to that tract designated by the court.”
We should be disposed to adopt the suggestion as made, if it were practicable, but we do not find it so, since the judgment appealed from, holding that the suit is multifarious, like the exception on which it is based, has the same application to one group of defendants as to another, and as the trial judge could not have discriminated, by dismissing the suit as to one group and allowing it to stand as to the others, neither can this court so discriminate. The judgment appealed from is accordingly affirmed.