# Arnett v. Chesapeake & Ohio Railway Company.

(Decided March 23, 1923.)

## Appeal from Boyd Circuit Court.

1.  Carriers—Invalid Received for Transportation, Notwithstanding Violation of Rule, is a Passenger.—An invalid, who was received by the conductor of a train for transportation in the baggage car while she was lying upon a bed spring, was a passenger, entitled to all the priviliges as such, though a rule of the company permitted such persons to be received only if they were lying on cots, and the conductor had received her as a passenger only on condition a cot be procured for her at the next station.

2.  Carriers—Rule Requiring Invalid Passenger to be Transported on Cot is Reasonable.—The rule of a carrier requiring an invalid passenger to be transported on a cot, instead of on a bed spring, is reasonable, in view of the greater safety of the passenger while on a cot raised from the floor, and of the greater ease in taking her in and out of the car, so that the carrier could properly require such passenger to be removed from the train, if a cot was not procured for her.

3.  Carriers—Instructions Submitting Issues as to Whether Brakeman Assisted in Removing Invalid Passenger was Negligent Held Correct.—In an action for injuries to an invalid passenger while she was being removed from a baggage car while lying on a bed spring, where the only disputed question of fact was whether a brakeman assisted in removing her and dropped one corner of the spring, causing her to fall therefrom, instructions that if the jury believed the brakeman assisted in removing plaintiff, and negligently allowed her to fall from the springs, she might recover, and not otherwise, and that, even if they believed the brakeman assisted in removing her, they could find for her only if they believed the fall was the result of his negligence, were proper.

4.  Carriers—Employes Need not Offer Assistance to Invalid Passenger Accompanied by Male Relatives.—Employes of a carrier need not offer assistance to a passenger known by them to be an invalid, where such passenger was accompanied by male relatives, so that it was not their duty to assist in removing from the train an invalid passenger, who was accompanied by her son-in-law and another man, who took charge of her removal from the train with the assistance of others, and did not request any assistance from the train employes.

JOHN F. COLDIRON, W. D. O'NEAL & REED and BLAINE YORK for appellant.

WORTHINGTON, COCHRAN, BROWNING & REED and PRICHARD & MALIN for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—
Affirming.

In November, 1917, appellant, an invalid and a woman then about sixty years of age, was living in Menifee county with her daughter, Mrs. Salyers, about fifteen miles or more from Rothwell, the nearest railroad station. She had been an invalid for some time, and practically helpless. She had been living with her daughter for several years, but desired to go on a visit to her son who lived in West Virginia. Accordingly arrangements were made with a neighbor, Mr. Murphy, by which he and his team should transport her from her daughter's home to the railway station to the end that she might then proceed by rail to her son's home in West Virginia. Rothwell is a station on a short line of road operated and controlled by the Chesapeake & Ohio Railway Company, and which line runs from Mt. Sterling to Rothwell.

On the wagon trip appellant was accompanied by Mr. Murphy, Mr. Salyers, her son-in-law, and her daughter, Mrs. Salyers, and one or two of the small children of the latter. They reached Rothwell some little time before the train was to start to Mt. Sterling, and tickets were purchased for her and her daughter, who was to accompany her on the trip. On the wagon trip she had been placed in the wagon bed on some folding bed springs over which was thrown a feather bed. When on this improvised bed they started to lift her into the train at Rothwell on the springs, the conductor told the party, including appellant, that he could not accept her as a passenger on that sort of a bed under the rules of the company. The conductor was told, however, that they could get a cot at Cornwell, a station just a mile away, and they then placed appellant on the train with the understanding that a cot should be procured at Cornwell. Mr. Murphy, in accordance with this understanding, immediately left for Cornwell before the train started, to procure the cot and have it ready when the train reached there. In fact Murphy had called up a store at Cornwell before he had left home and had received information that they had cots.

The train started in due time but Mrs. Arnett's ticket was not taken up by the conductor; when they reached Cornwell, however, they received information from Mr. Murphy, who had preceded them, that he could not procure a cot there, and the conductor then said he could

not further transport the woman on the bed she was then occupying in the baggage car, but proposed that if one of the men in the party would proceed with her to Mt. Sterling and take care of her he would still agree to carry her. This proposition, however, seems to have been declined.

Thereupon she was removed from the train at Cornwell, and in removing her she was either thrown from or fell from the improvised bed during the removal and received some injuries in the fall.

This is an action by her against the Chesapeake & Ohio Railway Company for damages because of such injuries alleged to have resulted by reason of the negligence and carelessness of the defendant's agents and servants in so removing her. The answer was a traverse, merely denying that the plaintiff was ejected or removed from the car by the defendant or its agents or servants, or that her injuries resulted from the negligence or carelessness of any servant of defendant. An amended petition was later filed, pleading and relying upon a rule of the company prohibiting the transportation of invalids except on cots in baggage cars.

The case went to trial on these issues, and was submitted to the jury, which found for the defendant, and the plaintiff's petition having been dismissed and her motion for a new trial denied, she has appealed.

The only material issue of fact in the case is whether the brakeman of the passenger train assisted in removing appellant from the train at Cornwell, the appellant and her daughter stating that some man they did not know but who had a cap on indicating he was a trainman assisted in such removal and let loose of the improvised bed, together with others who then had hold of it, and caused the injury. On the other hand, the brakeman and conductor deny that the brakeman assisted in such removal and state that at the time of the woman's fall they were each at another part of the train and engaged in repairing a leak in the air brakes, and their evidence on this point is corroborated by three or four others who were assisting in removing appellant fom the train, and by the statement of several witnesses that the brakeman on that train did not wear a uniform or a cap.

In the first instruction the court told the jury that as a matter of law under the evidence the conductor had the right to require the plaintiff to be removed from the train at Cornwell and that there could be no recovery

on account of such removal whether the same was voluntary or involuntary on her part. Counsel for appellant, however, is in error in his contention the court instructed the jury in that instruction that appellant was not a passenger on the train, for clearly when the conductor agreed to carry appellant from Rothwell to Cornwell up to the time of her arrival at the latter place, she was entitled to all the privileges of a passenger, and the duty devolved upon the train operatives to treat her as such.

But being a passenger and entitled to treatment as such is one thing, and the right of a conductor under a reasonable rule of the company to have a passenger removed from the train is quite a different thing; and whether this instruction correctly states the law must depend upon the reasonableness of the company's rule requiring that such passengers shall be transported in the baggage car on a cot.

Manifestly, carriers must have rules and regulations governing the transportation of invalid or disabled passengers who are unable to use the equipment furnished by it for the transportation of well and vigorous ones. Clearly such invalid or disabled passengers must be lifted on and off the trains on some sort of contrivance; plainly their safety and comfort require that they should not be placed in a railroad train on the floor of a baggage car. In any accident that might happen to the train that position, necessarily, would be more dangerous than if the passenger was on an elevated cot or structure. Not only so, in lifting the invalid on and off the train safety and convenience require that he or she should at the time be on some bed or contrivance which will be easily handled and easily removed. A cot is a small, narrow bed with four legs to it and which may be conveniently handled by two men, one at each end, and which will pass through an ordinary door without tilting.

But it is stated for appellant that the bed springs upon which she was being transported were just as good and convenient and safe for that purpose as would have been the cot; and that, therefore, the rule of the company requiring a cot in this case was unreasonable, and she should not have been required to leave the train.

But the very facts in evidence in this case show the error of this contention; the evidence shows that appellant fell or was thrown from the bed springs because of the inconvenience in taking her on that instrumentality

through the door of the car, and that the springs probably sagged in some way which caused her to fall; whereas if she had been on a cot she might have been easily lifted off through the door of the car and safely placed upon the platform.

The purpose of the regulation requiring such passengers to travel on a cot in the baggage car was primarily to enable such passenger to travel with safety and convenience, and at the same time in such way as to be easily and readily removed on to and off the train. We have, therefore, without difficulty reached the conclusion that such a regulation is a reasonable one and that the first instruction of the court was therefore proper.

The second instruction submitted the only issue of fact in the case and that was whether the jury believed from the evidence the brakeman assisted in removing the plaintiff from the train, and they were told if they so believed and that he negligently allowed the plaintiff to fall from the springs, from which fall she was injured, then she might recover and not otherwise. The third instruction only told the jury that if they did believe the brakeman assisted in removing the plaintiff from the train they might find for the plaintiff then only if they believe the fall was the result of his negligence.

These instructions were each eminently proper and submitted in apt language the only issues in the case, and it is perfectly plain that the jury found for the defendant on them, for the evidence preponderated greatly in favor of the defendant.

But it is argued that because appellant was entitled to the privileges and attention due to a passenger, it was the duty of the train operatives when she was removed from the train at Cornwell to assist in such removal and to see that she was properly and safely removed.

It may be conceded that when the condition of an invalid or disabled passenger is so apparent to the train operatives as to impose notice of that fact upon them, or when they have been notified of such invalidity or helplessness, it becomes their duty ordinarily to render such assistance in boarding or alighting from the train as may be necessary. But there is in this state a modification of that rule, and that modification is to the effect that if such passenger be at the time accompanied by male friends or relatives who are conveniently near and able to render such passenger the necessary assistance,

the train operative is under no duty to render such assistance unless requested so to do.

The case of L. & N. Railroad Company v. Dyer, 152 Ky. 264, was where a married woman with a baby in her arms, but accompanied by her husband and brother-in-law, sued for damages for injuries received by her in attempting to enter a train. The question of the duty of the brakeman to such passenger was involved, and it appeared the brakeman was standing nearby when she attempted to board the train, as were her husband and brother-in-law. In that case, after holding that when a train employe knows a passenger is sick, crippled or infirm, it is his duty to render such passenger assistance in boarding or alighting from the train, the opinion proceeds to say further:

"Plaintiff was carrying a baby, and there was evidence that the steps were unreasonably high; but she was accompanied not only by her husband but by her brother-in-law. They were both present and near her when she attempted to board the train. While she says that the brakeman was standing near, she did not request his assistance. Though if unaccompanied by the two male members of her family, the fact that she was carrying a baby and the further fact that there was evidence tending to show that the steps were unreasonably high, would, if known to the brakeman, have been sufficient to impose upon him the duty of rendering her assistance, yet we think that in view of the fact that she was accompanied not only by her husband but by her brother-in-law, who were near by and could have rendered the necessary assistance, it was not incumbent upon the brakeman to assist plaintiff unless requested to do so. It follows that the trial court erred in authorizing a recovery based on the failure of the brakeman to assist plaintiff to board the train."

This same case is also reported in 48 L. R. A. (N. S.) 816, and there is appended to it an extensive note bearing out the general principle announced.

In this case there was no request made of any train operative to assist in removing appellant from the train; on the contrary, it appears from a decided preponderance of the evidence that Murphy, the neighbor and friend, who had driven them in the wagon from their home, managed and controlled the whole process of removal, and had procured several other persons at the station to assist in such removal, and that the removal was done

in the presence of the son-in-law of appellant. These parties appear to have proceeded with the removal wholly without assistance or advice from the train operatives or any of them, and we think under these circumstances the instructions of the court were proper, and that no liability existed unless some train operative was assisting in the removal and was guilty of negligence, or had been requested to do so and failed or refused.

Judgment affirmed.