JOHNSON v. BISSO FERRY CO., INC. ET AL.

(April 7, 1930. Opinion and Decree.)

Woodville & Woodville, of New Orleans, attorneys for plaintiff, appellant.

Lemle, Moreno & Lemle, of New Orleans, attorneys for defendants, appellees.

JANVIER, J. Plaintiff was a passenger on a ferryboat owned and operated on the Mississippi river by defendant Bisso Ferry Company, Inc.

She was seated on the main deck of the boat on a seat, provided by defendant corporation for passengers, and, while so seated, was injured by being struck by a large wooden box which was knocked against her by an automobile owned and driven by the other defendant, J. S. Costello. The box was a part of the equipment of the ferryboat, and at the time it was struck by the automobile was in its proper place, alongside the engine room, and was not in any sense in the path of the automobile.

The main deck was used by both foot passengers and automobiles, and it is contended by plaintiff that the ferry operators should have provided rails in front of the seats, or should have placed the seats on platforms elevated above the level of the deck itself, so that automobiles, even if carelessly driven, might not come into contact with passengers seated in the place provided for them.

Defendant corporation contends that the boat was constructed with seating arrangements similar to practically all ferries operated on the Mississippi river at New Orleans and in most of the other places in the United States in which ferries are required.

There seems to be no doubt that the boat in question was so constructed as to afford automobiles ample room to drive completely around the deck without coming dangerously near the seated passengers. In fact, the evidence shows that two cars may stand abreast between the outer rail of the deck and the seats in question without endangering or unduly crowding passengers in those seats.

At the time of the accident, there was only one line of automobiles on the boat, and there was no reason for any one connected with the operation of the vessel to anticipate that an automobile would run into plaintiff or into any of the equipment or paraphernalia on the boat.

For many years this ferry corporation had operated innumerable boats similar in all respects to the one involved here, and the record shows that no similar accident had occurred. This fact and the further proof that nearly all ferries used for like purposes are similarly constructed is rather convincing evidence of the fact that defendant corporation furnished as safe a place for plaintiff as is customarily furnished by prudent carriers engaged in like enterprises. This is all they were required to do. They are not insurers of the safety of their passengers. Corpus Juris, "Carriers," vol. 10, p. 863, sec. 1302; Miles vs. N. O. Public Service, Inc., 3 La. App. 496; Cusimano vs. N. O. Public Service, Inc., 170 La. —, 127 So. 376. They are liable only if they fail to exercise the highest degree of care usually exercised by prudent persons engaged in the same or similar enterprises.

In the planning and construction of their ferryboats they may adopt methods which have been in general use and have been found to be safe and efficient.

In Frobisher vs. Fifth Ave. Transp. Co., Ltd., 151 N. Y. 431, 45 N. E. 839, 840, it was sought to hold the defendant liable because on one of its busses the open back step was used. The court said:

"It is quite apparent, from the testimony given, that both kinds of steps are in general use, and that each may have its advantage and disadvantage. * * * We think, therefore, · that the defendant was not chargeable with negligence by reason of its use of the open step, and that its use did not render the omnibus defective."

In Crocheron vs. North Shore Staten Island Ferry Co., 56 N. Y. 656, we find the following:

"The stairs were finished in the same manner as upon the best river boats and upon American seagoing steamers. The boat had been in use a year and had carried, on an average, a thousand passengers a day; no injury of the kind had before occurred. Several experienced men testified that this mode of covering stairs was the best in use. Held, that the evidence failed to show negligence, and that a refusal to nonsuit plaintiff was error."

In Loftus vs. Union Ferry Co. of Brooklyn, 84 N. Y. 455, 38 Am. Rep. 533, we find the doctrine which is involved here so well stated that we deem it advisable, rather than to use words of our own, to quote at length from that decision:

"The defendant was bound to provide suitable and safe accommodations for the landing of passengers. The rule of the strictest diligence in this respect is the only one consistent with a due regard to the value of human life and with the relation which the defendant assumes to the public. But the rule does not impose upon the defendant the duty of so providing for the safety of passengers, that they shall encounter no possible danger, and meet with no casualty, in the use of the appliances provided by it. It was possible for the defendant so to have constructed the guard, that such an accident as this could not have happened; and this, so far as appears, could have been done without unreasonable expense or trouble. If the defendant ought to have foreseen that such an accident might happen, of (or) if such an accident could reasonably have been anticipated, · the omission to provide against it would be actionable negligence. But the facts rebut any inference of negligence on this ground. The company had the experience of years, certifying to the sufficiency of the guard. That it was possible for a child or even a man to get through the opening was apparent enough. But that this was likely to occur was negatived by the fact that multitudes of persons had passed over the bridge without the occurrence of such a casualty. If the structure was intrinsically insecure, the fact that it had been used without injury before this would not exempt the company from responsibility, when an accident did happen from its defective condition. The guard was concededly sufficient for grown people. A small child might more easily get through the opening than a man, but small children are usually in charge of parents or guardians; and this is entitled to some weight in determining the question of the company's negligence. We think the exemption of the defendant in this case rests upon the fact which we think clearly appears as an inference from the other facts, that the company had no reason to apprehend an accident like this, and that the arrangements made were such as ·experience had, up to that time, shown to be safe and suitable, and sufficient to meet the requirements of its duty."

It is true that the mere fact that the facilities used are in common use is not always enough, and that such appliances or methods of construction are usual does not relieve the carrier of negligence, if the appliance or method of construction· is inherently dangerous. Here, however, we are unable to find that the method of construc-. tion of this particular vessel is inherently dangerous, in view of the fact that the passageway for automobiles was unusually wide.

The record shows that this vessel, as well as all other vessels in the harbor of New Orleans, are regularly inspected by United States marine inspectors, and that, in this inspection, the safety and convenience of passengers is given consideration. If there had been anything inherently dangerous about the locating of seats alongside the engine room, it is reasonable to presume that the federal inspectors, well versed in such matters, would have required the removal of those seats. Of course, there may be vessels in which the location of seats on the main deck might of itself constitute negligence, but on the boat involved here we cannot see that such is the case.

We now consider the other defendant, Costello. We cannot agree with our brother of the district court that the record fails to show his negligence. He admits that he was driving at a speed of about ten miles an hour. We consider this speed excessive, in view of the locality in which the automobile was being operated. It is true that the only evidence as to the sudden swerve of his car is his own statement that another passenger unexpectedly stepped in front of him. But, even in the absence of other evidence, we think that his admission of this speed and the further fact that he could not stop his car instantly are sufficient to convict him of negligence.

Fortunately, the injured woman was not seriously hurt. She was required to go to the hospital for one day, and, for the succeeding two months was, more or less, under the observation of a physician. Such bruises and contusions as she received were temporary in the extreme, and we believe that $300 will fully compensate her for her sufferings and losses.

It is therefore ordered, adjudged, and decreed that the judgment appealed from, in

so far as it dismisses the suit against the Bisso Ferry Company, Inc., be and it is affirmed, and that, in so far as it dismisses the suit against J. S. Costello, be and it is annulled, avoided, and reversed, and that there now be judgment in favor of plaintiff and against J. S. Costello in the full sum of $300, with legal interest from judicial demand and for all costs.