(100 South. 430)

No. 26059.

## McGEE v. COLLINS et al.

(April 7, 1924. Rehearing Denied by Division A May 12, 1924.)

*(Syllabus by Editorial Staff.)*

1. Action �038;50(9)—Joinder of individual defendants and insurance companies in suit for damages for slander and libel held improper.

Where association of insurance companies passed a resolution condemning practices of plaintiff, an insurance agent, in obtaining business, and president and secretary of such association and manager of one of the insurance companies had uttered words alleged to be slanderous, plaintiff could not join such persons and the insurance companies in one action.

2. Action �038;50(9)—Defendants sued for conspiracy held to have sufficient community of interest to be joined in one suit.

Where association of insurance companies passed resolutions condemning the practices of

plaintiff, an insurance agent, in obtaining business, *held*, that sufficient community of interest was shown by petition to authorize joinder of all insurance companies and their agents in one suit for conspiracy to injure plaintiff's business and reputation.

3. Libel and slander �038;74—Defendants cannot be jointly sued in slander.

While a published libel may be the joint act of two or more individuals or corporations, in slander the words of each person uttering it is an entire and distinct offense, and two or more persons cannot jointly be sued for slander.

4. Dismissal and nonsuit �038;56—Dismissal as to all defendants proper, where exception to misjoinder is sustained.

Where an exception or misjoinder of defendants is sustained, the court may dismiss as to all.

5. Libel and slander �038;9(1)—Resolutions and publications of life underwriters' association held not libelous.

Where life underwriters' association published resolutions condemning the practices of plaintiff, an insurance agent, in persuading persons carrying insurance to cancel it, and take out new policies in plaintiff's companies, such resolutions charging that such practice was not for the benefit of the policy holder, and recommending that insurance companies refuse business so obtained and cancel plaintiff's license, and also published in newspapers a statement that new insurance could not replace old insurance, with benefit to policy holders, *held*, that plaintiff had no cause of action for libel.

6. Libel and slander �038;45(2)—Resolution of insurance association condemning practices of insurance solicitor held privileged.

Where a life underwriters' association passed resolutions condemning the practice of plaintiff, an insurance solicitor, in procuring persons carrying insurance to cancel it, and take out new policies through plaintiff, *held*, that such resolution was a privileged communication.

7. Conspiracy �038;8—Life insurance companies held not liable for refusing to have business dealings with plaintiff insurance solicitor.

Where plaintiff insurance agent attempted to procure persons already insured to cancel their policies and take out new policies through him, insurance companies which were members of a life underwriters' association had a right to refuse to have business dealings with plain-

tiff, and were not liable in conspiracy for so doing, when acting in furtherance of a common interest for their own protection and in defense of an attack of a common adversary.

**8. Libel and slander** ⊚⟶**21—Published article held not actionable as to one not named.**

Article published by a life underwriters' association, stating that policies rated at the age of issue could not be replaced to insured's advantage at the higher rate applicable to attained age, and that any attempt by audit or adjustment to change contracts in force was solely for the profit of the individual attempting the change, *held* not to afford cause of action to an insurance agent attempting to procure business in that way, when not named in the article.

**9. Torts** ⊚⟶**16—Party at fault cannot recover from another retaliating.**

One who is at fault cannot recover civil damages from another who has retaliated in kind.

Appeal from Civil District Court, Parish of Orleans; Hugh C. Cage, Judge.

Action by Ira J. McGee against Joseph Collins and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Boswell & Bryant, of New Orleans, for appellant.

Monroe & Lemann, Milling, Godchaux, Saal & Milling, Spencer Gidiere, Phelps & Dunbar, Dufour, Goldberg & Kammer, Richard B. Montgomery, Edward Dinkelspiel, John C. Davey, Edgar M. Cahn, Denegre, Leovy & Chaffe, Miller, Miller & Fletchinger, Eugene J. McGivney, and Edward Rightor, all of New Orleans, for appellees.

By Division C, composed of OVERTON, ST. PAUL, and THOMPSON, JJ.

THOMPSON, J. This is an action by the plaintiff, an insurance agent and solicitor, against 29 other agents and solicitors and 18 life insurance companies doing business in this state, all in solido, for damages for the destruction of plaintiff's business, for loss of profits which he would have made, and for distress of mind, humiliation, and injury to his reputation and standing. He places his damages, all told, at $378,500.

The cause which plaintiff alleges brought about his injury and undoing was certain libelous resolutions and publications made by the Life Underwriters' Association of Louisiana acting for and on behalf of itself and the insurance companies doing business in this state and named in plaintiff's petition, and certain slanderous and defamatory remarks uttered by three individuals named in the petition—all of which libel and slander, plaintiff claims, was the carrying out and in furtherance of a preconceived plan and conspiracy on the part of the insurance companies and their agents and solicitors to prevent the plaintiff from practicing his profession as life insurance solicitor and advisor.

The defendants all filed exceptions of vagueness, of no cause or right of action, and of misjoinder of parties defendant. The exception of no cause of action was sustained as to all the defendants except three individuals, and as to them the exception of misjoinder was sustained.

The resolutions which plaintiff complains of and which he charges were sent out to all the life insurance companies doing business in this state, and which it is alleged were published in the American Insurer, a newspaper of general circulation published in the city of New Orleans, are as follows:

"Twisting in Louisiana.

"Resolution of the Life Underwriters' Association calls attention

"To Practice.

" 'Several complaints have been received by the Life Underwriters' Association of Louisiana alleging that Ira J. McGee, who recently opened headquarters in New Orleans, is engaged in the practice of twisting. The matter was considered at a meeting of the executive committee of the association this week, and, after a thorough discussion of the subject, the follow-

ing resolution calling attention to McGee's operations and condemning the practice of twisting, was passed.'

"It has been brought to the attention of the Life Underwriters' Association of Louisiana that one Ira J McGee, alleging he is an actuary, is suggesting and urging the holders of policies in companies whose representatives are members of the association, to surrender such policies and rewrite in such companies as McGee may propose, representing such a course can be pursued with profit to the insured.

"As life underwriters, knowing that the promises on which such conclusion is based is unprofitable to the insured, we deem it a duty to our clients to put a stop to this practice.

"Therefore, be it resolved that we condemn the practice of canceling old policies in any solvent established life insurance company, to be replaced in the same or any other life insurance company, as we know that it is against the interests of the policy holder.

"Be it further resolved that this practice be brought to the attention of the executive officers of all life insurance companies doing business in the state of Louisiana, and to the general agents or managers of said companies, to the end that all business submitted by the said McGee may be scrutinized to determine whether it involves the surrender of the old policy in any well-established legal reserve life insurance company, and, if it does, the acceptance of such business be declined.

"Be it further resolved that, if said McGee is found guilty of this practice, the company or companies employing him be requested to cancel his license to do business in Louisiana."

The other article which plaintiff claims was libelous, and which he alleges was published in the Times-Picayune, the Daily States, and the Item, is as follows:

### "Parasites and Pirates.

"The evidence of prominent bankers, captains of industry and merchants in favor of life insurance for men of all classes is overwhelming.

"Policies now carried are rated at the age of issue and could not be replaced to the insured's advantage at the higher rate applicable to attained age.

"Any man who attempts by so-called audit or adjustment to change life insurance contracts in force is working solely for his own profit. The agent who placed the policy or his company's agency manager, will give you, free of expense, the proper advice with true service. Beware of others.

"The Life Underwriters' Association<br>of Louisiana."

It is alleged that Edward G. Simmons, manager of the Pan-American Life Insurance Company, acting for himself and for said company, told one George W. Nott, who was dealing with petitioner, that petitioner was a faker, and was pulling off a "get rich quick game," and warned Nott to have nothing to do with him. That said Simmons made the same statements to one Robert H. Downman.

That one Robert A. Hopkins, secretary of the said association, acting for himself and on behalf of the said Life Underwriters' Association, stated to A. L. La Combe, manager of the Manhattan Life Insurance Company, that petitioner was a crook, and was pulling off a fake proposition.

That one Joseph Collins, president of the Underwriters' Association, and agent of the New York Life Insurance Company, stated to one Pendleton over the telephone that the plan suggested by petitioner for the adjustment of the insurance policies was a fake, and that petitioner's advice was dishonest, and was intended to profit petitioner while injuring said Pendleton; as a result said Pendleton refused to deal further with petitioner.

It appears further from the allegations of the petition that the plaintiff had for many years devoted himself to the study of life insurance and of contracts and policies made and issued by life insurance companies, and had thereby become highly competent to solicit life insurance and to advise holders of life insurance policies regarding their rights under their policies; that under the policies issued by the companies doing business in this state, and named in the petition, the holders are granted various rights to be claimed at their option, and that it frequent-

ly happens by exercising such rights that insured persons are enabled to obtain valuable advantages by obtaining an equal amount of insurance at less cost, or increasing the amount of insurance at the same or less cost, or by recovering a part of the premiums previously paid, and at the same time increasing the insurance value of their policies at the same or less cost.

It is alleged that the provisions of the policies in which such options are granted are expressed in technical language, so that the ordinary man without the advice of an expert, such as petitioner is, remains in ignorance of his rights, and because of such ignorance does not avail himself thereof; that it is to the interest of the insurance companies that their policy holders should be prevented from obtaining such advice and should be kept in ignorance of their rights; that it is also to the interest of the solicitors and agents of said insurance companies to keep the policy holders in ignorance of their rights, because such agents lose their commissions on the renewal premiums.

The plaintiff in the early part of 1921 secured the agency to represent the Manhattan Life Insurance Company, the Penn Mutual Life Insurance Company, and the Travelers' Insurance Company in this state, and obtained the proper license from the secretary of state. The contracts of the plaintiff with the said companies were canceled by the said companies within a few months after they were made, and it is charged by the plaintiff that the cancellation was made at the instance of the defendant companies and their agents as a result of the resolutions and publications herein previously copied, and was for the purpose of preventing petitioner from practicing his profession as life insurance solicitor and advisor, to destroy the business which he had built up, and further to keep the policy holders from being advised of their rights under their policies, and from claiming the benefits thereof.

[1] The first question in logical order is whether under the facts alleged in the petition the defendants can all be joined in one suit. In this connection it may be stated as an accepted rule of law and jurisprudence that two or more persons cannot be grouped together and joined in one suit either as plaintiffs or defendants, where there is no privity of contract or mutuality of interest.

In Mavor v. Armant, 14 La. Ann. 182, it was said that the law does not permit a creditor to sue all of his debtors in the same action, unless there is a joint liability or privity of contract or interest which authorizes the joinder.

And in Dyas & Co. v. Dinkgrave, 15 La. Ann. 503, 77 Am. Dec. 196, it was said:

"To hold otherwise would be at variance with the well-settled rules of pleading, and might lead to a multiplicity and confusion of pleas and issues, at present unknown to our system of practice, to say nothing of the consequences of a general verdict and judgment rendered in such a case, consolidating the claims into one, or allowing some and rejecting others."

In the case of Gill v. City of Lake Charles, 119 La. 18, 43 South. 898, it was pointed out that our Code of Practice makes no provision for determining when parties may or may not be joined either as plaintiffs or defendants, but the court, after reviewing many authorities, said:

"The general result of the foregoing may be said to be that the avoidance of a multiplicity of suits is always desirable, but that parties are not allowed to join unless they have a common interest as to the point at issue, and that even then the court may exercise a discretion."

In a still later case, Courtney v. Louisiana Ry. & Nav. Co., 131 La. 575, 59 South. 994, the court reaffirmed the rule that—

"There is a misjoinder of defendants where there is no joint liability for loss, or privity of contract, between them or some of them."

It is contended that the allegations of the petition are sufficient to bring the defendants, Simmons, Collins, and Hopkins, who

are charged with the slander and defamation of petitioner by words, within the charge of conspiracy made against the insurance companies and their agents, and to make them liable in solido with the said companies, and that the said individuals are therefore properly joined in the suit.

It is true that in paragraph 17 of the petition it is alleged " * * * that in pursuance of the said combination and conspiracy and for the purposes aforesaid, and with the motives and intents aforesaid the said corporations and the said persons in concert did the following acts and things, * * * " and it is also true that following said paragraph the three defendants named are alleged to have made the remarks imputed to them, but nowhere in said petition, before or after the allegation of the specific slander by the said three defendants, are their names mentioned as in any manner connected with the alleged conspiracy.

The entire petition, in so far as the conspiracy charge is concerned, is manifestly directed at the insurance companies and the agents named, and does not include specially nor inferentially the three individuals referred to. The obvious basis for the charge of conspiracy is the resolutions and publications, with which the petitioner in no manner connects the three individuals.

It is quite clear, therefore, that the action for personal slander against Simmons, Collins, and Hopkins is wholly distinct from and independent of and has no connection with the action for libel against the insurance companies.

[2] With respect to the several insurance companies and their agents and solicitors the allegations of conspiracy made in the petition, when taken in connection with the resolutions of the Underwriters' Association and the publication headed "Parasites and Pirates," show a sufficient community of interest and singleness of purpose as to authorize the joinder of all of said companies and their agents in one suit.

As said by the author in Newell on Slander and Libel (3d Ed.) p. 467:

"But with libel it is different; the publication of a libel may be the joint act of two or more persons, who may in such case be sued either jointly or separately at the election of the plaintiff."

[3] But, while this is true as regards the published libel which may be the joint act of two or more individuals or corporations, it is not so with respect to an action for slanderous words, for the reason that the words of one person are not the words of the others. The words of each constitute an entire and distinct offense.

In Duquesne Distributing Co. v. Greenbaum, 135 Ky. 182, 121 S. W. 1026, 24 L. R. A. (N. S.) 955, 21 Ann. Cas. 481, it was said:

"All the authorities are agreed that slander, which is an oral utterance of defamatory matter, must necessarily be committed by an individual. Two or more persons cannot in the very nature of things jointly utter the same words. Each must and does speak for himself, and each is liable for his own language. A dozen persons might repeat identically the same slanderous words at one and the same time or at different times, and each would be liable in an action against the individual; but two or more of them could not be jointly sued."

In the above case a further reason was pointed out why two or more persons could not be joined in an action for personal slander by words, and it is this, that the same words spoken by one may occasion greater injury than those spoken by another, and that each should be responsible only for the injury inflicted by his own independent act. The author cites Cooley on Torts, p. 124.

The application of the rule to the instant case is apparent. The three individuals could not be held, jointly or separately, for the alleged libel of the insurance companies, nor could the insurance companies, separate-

ly or collectively, be held liable for the slanderous words of the three individuals.

Admittedly, the libel (if it is a libel) charged against the insurance companies in the very nature of the case would cause the plaintiff to suffer much greater damage than would the mere defamatory words attributed to the individuals.

[4] Our conclusion is that the exception of misjoinder is well founded in law and in reason. Having reached this conclusion, we might well end this discussion here by dismissing the suit as to all the defendants, since—

"Where an exception of misjoinder of defendants is sustained, the court cannot discriminate by dismissing the suit as to one defendant, rather than another, but must, ordinarily, dismiss it as to all." Davidson v. Frost-Johnson Lumber Co. et al., 126 La. 542, 52 South. 759.

However, as the question of whether the plaintiff has a cause of action is directly presented by the petition and the exception of no cause of action, and as it is to the interest of all parties that the issue should be settled, at this time and in this suit, we shall proceed to do so.

[5] The argument, oral and on brief by the counsel on both sides, presents an able and exhaustive review and discussion of the law and jurisprudence bearing on practically every phase of libel and slander. But, after a careful consideration of the authorities and a study of plaintiff's petition in connection with the alleged libelous matter, we are of the opinion that the case resolves itself into the simple question as to whether the resolutions adopted by the Life Underwriters' Association and the publication under the caption "Parasites and Pirates" constitute in law and in fact actionable libel.

It will be recalled that, although the plaintiff had obtained contracts from three insurance companies as agent and solicitor for life insurance, his principal and doubtless most lucrative field of endeavor was among those who were already insured with the defendant companies. His declared business was to advise such policy holders to surrender and cancel their policies on the representation that he could, on account of his long experience and superior knowledge, get for them an advantageous adjustment and settlement and an equal amount of insurance at less cost to them, or a greater amount of insurance at the same cost.

To this end and in support of his scheme he accused the insurance companies of having, in their own interest and to protect the interest of their agents and solicitors, made use of such technical language in the policy contracts that an ordinary individual was not able to understand and comprehend his rights under the option and privilege supposed to be granted in the policy. In other words, the plain imputation, according to the plaintiff's own judicial confession, was that the insurance companies had deliberately, purposely, and advisedly so concealed the option and privilege that none but an expert like the plaintiff, with a ripe experience and study of such matters, could advise the policy holders of the true intent and meaning of the contract.

This was unquestionably a grave and serious charge against the insurance companies. A charge which affected the integrity and fair dealing of the companies with their patrons and customers, and coming from an insurance solicitor licensed by the state, was obviously calculated to affect their standing and to destroy the confidence, not only of the policy holders themselves, but of the insurable public generally, in life insurance.

It is not going too far to say that such conduct and practice on the part of the plaintiff placed him beyond and outside of the place of a fair and legitimate rival and competitor in the life insurance business. Instead of becoming a competitor whom the life insurance companies could welcome, he

assumed the attitude of a menacing antagonist, and his success avowedly depended upon and was measured by his ability, through the methods we have outlined, to destroy the business of the defendants by inducing the holders of policies to surrender and have them canceled.

It was in defense against this assault on their business and to counteract the effect of plaintiff's practices, which was regarded as prejudicial to the interest of holders of seasoned and long-standing policies, that brought about the adoption of the resolutions. Let us analyze the resolutions, and see whether they went beyond a legitimate defense of the attack made upon the companies.

First. The resolutions announced that the attention of the Life Underwriters' Association had been called to the fact that the plaintiff, styling himself an actuary, was suggesting and urging the holders of policies in companies whose representatives were members of the association to surrender such policies and rewrite in such companies as the plaintiff might propose, representing that such a course could be pursued with profit to the insured. There was nothing false and malicious or vindictive in this announcement; on the contrary it was but a statement of a fact admitted by the plaintiff in his petition.

Second. "As life underwriters, knowing that the promises on which such conclusion is based is unprofitable to the insured, we deem it a duty to our clients to put a stop to this practice." This was but a denial of the assertions made by the plaintiff, and it was a duty which the companies owed their clients to protect them against the actions of the plaintiff which the companies deemed prejudicial to the clients' interests.

Third. " * * * That we condemn the practice of canceling old policies in any solvent established life insurance company, to be replaced in the same or any other life insurance company, as we know that it is against the interests of the policy holder."

We can discover nothing wrong or injurious to the plaintiff in this declaration. The plaintiff had made the issue, and the companies had the undoubted right to meet it by condemning the practice of canceling polices in well-established companies and to advise their policy holders against accepting the advice of the plaintiff.

Fourth. The practice of the plaintiff was called to the attention of the executive officers of all life insurance companies and the general agents, to the end that all business submitted by the plaintiff might be scrutinized to determine whether it involved the surrender of the old policy in any well-established legal reserve life insurance company, and, if it did, that the acceptance of the business be declined. There is to be found nothing libelous lurking in this resolution. The insurance companies collectively or separately were interested in preserving the integrity of their contracts, and had the legal right, when they found what they believed to be an unjustifiable and an unfounded attack made upon them, to call upon all companies engaged in writing life insurance to decline such business, if it was the fruits of canceled and surrendered policies. There is certainly nothing in the resolution to indicate malice or bad faith on the part of the insurance companies, and they had a common interest in protecting their own interest and what they conceived to be the rights of their policy holders against a common antagonist who sought to destroy their business and to injure their clients.

[6] Moreover, the resolution under the circumstances must be regarded as a privileged communication. Mr. Newell in his work on Slander and Libel (3d Ed.) p. 475, says:

"A communication made in good faith, upon any subject-matter in which the party has an

interest, or in reference to which he has a duty, either legal, moral or social, if made to a person having a corresponding interest or duty, is qualifiedly privileged."

And in Richardson v. Cooke, 129 La. 365, 56 South. 318, it was held that there is a qualified privilege where the person making the communication complained of has an interest in the subject-matter, and the person to whom it is made has a corresponding interest.

Fifth. This involves the request that the companies employing the plaintiff cancel his license to do business in Louisiana, if it should be found that he was guilty of the practice charged against him. That the employers of plaintiff had the legal right to take such action is not disputed, and it would seem that it makes but little difference from what source they got the information upon which they based their action. The said companies are not liable to the plaintiff for any loss he may have sustained as a result of the withdrawal of his contracts, nor can the other insurance companies be held liable, and this is true, even though the three companies acted on the suggestion of the other companies.

"A person has an absolute right himself to refuse to have business relations with others, whether the refusal is based upon reasons, or is the result of whim, caprice, prejudice, or malice." Lewis v. Huie-Hodge Lbr. Co., 121 La. 658, 46 South. 685.

[7] All of the companies made defendants in this suit had the right to refuse to have business dealings with the plaintiff, and what they could do in this respect separately they could do conjointly, in view of the conduct of the plaintiff towards all of the insurance companies, and of their common interest in the subject-matter which severed the business relations with the plaintiff.

"Insurance companies cannot be made liable in an action for damages, for having conspired and agreed with each other that they would not insure any boat in which a particular person should be employed, in order to prevent that person from obtaining employment." Orr v. Home Mutual Insurance Co., 12 La. Ann. 255, 68 Am. Dec. 770.

The rule may have been too broadly stated in the foregoing quotation, and perhaps should be so modified as not to apply to conspiracies and combinations put into execution from wanton or malicious motives without justification of competition, and without interest or lawful purpose.

The instant case, however, is not such a case. All of the insurance companies were acting in furtherance of a common interest for their own protection and in defense of an attack of a common adversary, and there was an entire absence of any improper or malicious motive. The case is clearly distinguishable from Webb v. Drake, 52 La. Ann. 290, 26 South. 791. In that case, as the court said in Lewis v. Huie-Hodge Lbr. Co., supra—

" * * * The defendants * * * were not acting singly, each controlling his own conduct; but they had joined together in order to destroy plaintiff's business. That business was one which did not enter into competition with that of any of the defendants, but was entirely distinct from it."

The other libelous act charged against the defendants is the publication "Parasites and Pirates." That article merely called attention to the consensus of opinion of bankers and others in favor of life insurance; that policies are rated at the age of issue and could not be replaced to the insured's advantage at the higher rate applicable to attained age; that any attempt by so-called audit and adjustment to change life insurance contracts in force is solely for the profit of the individual attempting the change. Free advice is proffered by the insurance companies, and policy holders are warned to beware of others.

[8] There was certainly nothing objectionable in this warning and advice. If the plaintiff was in the class to whom the article was directed, he has no just complaint. He has no cause to reproach the insurance companies, much less a right to inflict a damage upon the companies for an act which he had provoked. Moreover, the plaintiff's name was not mentioned in the article.

"Where defamatory words reflect upon a class of persons impartially, and there is nothing to show which one is meant, no action lies at the suit of any member of the class." Newell on Slander and Libel (3d Ed.) p. 468; Mielly v. Soule, 49 La. Ann. 800, 21 South. 593.

[9] Aside from all that has been said, however, the plaintiff, in his attempt to recover damages from the defendants for the causes set out in his petition, is met with an insurmountable legal obstacle appearing upon the face of the papers, and that is the doctrine of provoked libel. It is a universal rule of law and jurisprudence that one who is at fault himself cannot recover civil damages from another who has retaliated in kind. We shall not attempt citation of the many adjudications adhering to and applying this rule. In Burt & Co. v. Casey Mfg. Co., 107 La. 231, 31 South. 667, it was said:

"The law lends its protection to every person, natural or juridical, to shield its good name, not to the extent, however, of protecting one and condemning the other when the complainant has itself been at times * * * intemperate in its seeking to maintain the vantage ground it had perhaps gained in its business."

The judgment appealed from is affirmed, at appellant's cost.

ST. PAUL, J., concurs in the decree.

Rehearing refused by Division A, composed of O'NIELL, C. J., and ROGERS and BRUNOT, JJ.