171 So. 453

LYKES BROS. RIPLEY S. S. CO., Inc., v. WIEGAND MARIONNEAUX LUMBER CO., Inc., et al.

No. 34065.

Nov. 30, 1936.

Rehearing Denied Dec. 21, 1936.

Terriberry, Young, Rault & Carroll and Walter Carroll, all of New Orleans, for appellant.

Cahn & Cahn and Edgar M. Cahn, all of New Orleans, for appellees.

HIGGINS, Justice.

The plaintiff appealed from a judgment sustaining an exception of misjoinder of parties defendant and dismissing its suit on the ground that the petition improperly cumulated two separate and distinct causes of action: First, an action ex contractu against one of the defendants; and, second, an action ex delicto against the other two defendants.

The defendant answered the appeal, praying that the judgment appealed from be affirmed upon the grounds of misjoinder of parties defendant; and, in the alternative, that the exceptions of no right or cause of action filed in the district court, as an alternative plea, be sustained.

The plaintiff contends that the petition sets forth a cause of action against each of the defendants in tort; but in the event the court should hold that the cause of action against the defendant corporation is based on a contract, and the cause of action against the individual defendants is founded in tort, nevertheless, it is permissible to join all of the defendants in one suit, since the causes of action arose out of the same transaction and the defendants are jointly and severally liable.

The pertinent part of the petition reads as follows:

"Art. I. Plaintiff Lykes Bros. Ripley Steamship Co., Inc., is a corporation organized and existing under and by virtue of the laws of the State of Louisiana and domiciled in the city of New Orleans.

"Art. II. Defendant Wiegand Marionneaux Lumber Co., Inc., is a corporation organized and existing under and by virtue of the laws of the State of Louisiana, domiciled and doing business in the Parish of Orleans, said State.

"Defendants, George E. Wiegand and Charles O. Marionneaux are residents of the Parish of Orleans, State of Louisiana, and are the president and vice-president respectively of said defendant Wiegand Marionneaux Lumber Co., Inc., and own or control all of the capital stock of said corporation and are the sole managers and operators of said corporation. Said corporation was at all of the times hereinafter mentioned engaged in the business of exporting hardwood lumber and logs and hardwood products.

"Art. III. Plaintiff is engaged in business as a common carrier by water between Gulf ports and certain ports in the United Kingdom of Great Britain and the Irish Free State. As such plaintiff is subject to the Shipping Act 1916, as amended (U.S.C.A., Title 46 § 801 et seq.).

"Art. IV. Plaintiff Lykes Bros. Ripley Steamship Co., Inc., is a member of the Gulf United Kingdom Conference, a conference formed pursuant to section 15 of the Shipping Act 1916, as amended [46 U.S.C.A. § 814], which said conference has filed its Articles of Agreement with the United States Shipping Board Bureau, which said Articles of Agreement were duly approved by the Department of Commerce on August 19, 1931.

"Art. V. The said Gulf United Kingdom Conference has filed with the Department of Commerce its freight tariff, which is applicable to all shipments from Gulf ports to

ports in the United Kingdom and the Irish Free State, and which establishes the lawful freight rate applicable to such shipments; and has also filed with the Department of Commerce its rules and regulations applicable to such shipments.

"In accordance with said freight tariff at all the times hereinafter mentioned the lawfully established rates on shipments from Gulf ports to ports of the United Kingdom and the Irish Free State, for direct shipment, were, for the months of July, 1935, and August 1, 1935, to-date, as follows:

"*   *   *

"One of the Gulf United Kingdom Conference Tariff Rules and Regulations applicable to shipments from New Orleans to Great Britain and the Irish Free State was and is that 'freight charges shall be assessed on actual gross weight or measurement, according to tariff requirements,' and 'freights assessable on actual scale weights obtained from railroad expense bills; when such weights are not obtainable, shipments shall be weighed at ports of loading.'

"Art. VI. In connection with every shipment referred to in this petition, correct railroad freight bills were obtainable by defendants.

"Art. VII. During the period between July 1935 and March 1936, inclusive, defendant Wiegand Marionneaux Lumber Co., Inc., pursuant to its several freight engagements, duly made and entered into with plaintiff, shipped various lots of hardwood lumber, logs, and hardwood products by the steamers of plaintiff herein. Said shipments are hereinafter particularly described.

"Art. VIII. Plaintiff shows that in connection with each of the shipments hereinafter referred to defendant, Wiegand Marionneaux Lumber Co., Inc., through its officers and managers aforesaid, George E. Wiegand and Charles O. Marionneaux, defendants herein, and said defendants George E. Wiegand and Charles O. Marionneaux, for and on their own behalf and as stockholders in said corporation, prepared and presented to the plaintiff in connection with each shipment false and incorrect copies of railroad freight bills showing the purported weights of said shipments, which were considerably less than the weights shown in the true railroad freight bills, and prepared and delivered to plaintiff in correct export declarations.

"Plaintiff shows that the practice of the defendants of preparing and presenting to plaintiff carrier false railroad freight bills and incorrect export declarations, for the purposes hereinafter set out, was planned and systematically carried out by defendants, the method being the same in each case.

"Art. IX. In respect of each of the shipments referred to in this petition, plaintiff, because of said false representations, charged and collected freight thereon calculated upon said false railroad freight bills, which amounted to less than the lawfully established freight charges based upon the true weights.

"Art. X. Annexed hereto and made part hereof are bills covering each of the ship-

ments which went forward on the vessel of plaintiff, marked for identification Plaintiff 1 to Plaintiff 21, inclusive, showing the description of commodity, the port of loading, port of discharge, name of vessel, date of sailing, car number, track scale weight (which was the true weight), weight used in assessing the freight charges (which was supplied by the defendants), the difference between the said weights, and the amount due and owing on said difference.

"The excess of the true railroad weights over the false weights as prepared and presented by the defendants to plaintiff is shown as to each said shipment in the annexed bills. The total additional freight based upon the said true railroad freight bills due and owing to plaintiff is the sum of Three thousand, one hundred eighty-one and 15/100 dollars ($3,181.15), which plaintiff is entitled to recover of the defendants, jointly, severally and in solido.

"Art. XI. Plaintiff shows that the preparation and presentation to plaintiff aforesaid of said false copies of railroad freight bills and false export declarations by the defendants Wiegand Marionneaux Lumber Co., Inc., George E. Wiegand and Charles O. Marionneaux was due with the purpose and intent of securing transportation at less than the lawfully established rates for the benefit of the Wiegand Marionneaux Lumber Co., Inc., and for the ultimate benefit of defendants George E. Wiegand and Charles O. Marionneaux.

"Art. XII. Plaintiff shows that defendants have admitted the correctness of the foregoing items and defendant Wiegand Marionneaux Lumber Co., Inc., has admitted liability for same, but, in spite of amicable demand, said amount has not been paid.

"Wherefore, plaintiff, Lykes Bros. Ripley Steamship Co., Inc., prays that after due proceedings had there be judgment herein in favor of plaintiff and against defendants Wiegand Marionneaux Lumber Co., Inc., George E. Wiegand, and Charles O. Marionneaux, jointly, severally and in solido, in the full sum of Three Thousand, One Hundred, Eighty-one and 15/100 ($3,-181.15) dollars, with interest thereon from date of judicial demand until paid, etc."

The Louisiana rule on joinder of parties defendant is stated in 47 Corpus Juris, at page 82, as follows:

"Rules in Louisiana. The code of Louisiana is generally founded on the civil law; but the code of practice makes no provision for determining when parties may or may not be joined as defendants, and it has been said that the practice as to such matters generally must be determined by the rules of the common law, according to which a large discretion is left to the court. The test as to whether several persons may be joined as parties defendant is whether they have a common interest or liability in respect of the subject matter of the suit; and where they have such a common interest in the principal matter in controversy they may be joined as defendants, notwithstanding there is some distinction in plaintiff's claim against each defendant. But a person cannot be joined as defendant in an action on a demand in which he has no interest; and several per-

sons cannot be joined as defendants where they have no community of interest in the subject matter of the litigation, as where the causes of action against each defendant are distinct and separate and arose from different and independent transactions; nor can two parties be joined as defendants, where one or the other is liable, but not both."

See, also, Ruling Case Law, Vol. 1, 363.

In the case of Reardon v. Dickinson, 156 La. 556, 100 So. 715, 716, the court said:

"The test to be applied in considering a plea of misjoinder is whether the parties, plaintiffs or defendants, have a common interest in the subject-matter of the suit. * * *

"From the foregoing recited facts it is apparent that all of the plaintiffs were moved and induced to subscribe for the stock of the corporation on the false and misleading representations of the common agent of the promoters and organizers of the corporation, and it follows as a corollary that all of them have an interest in common with each other to recover the amounts which each of them paid out on such fraudulent representations. It can make no difference whether the representations were made to the plaintiffs individually or collectively, at one time and place or at different times and places. It suffices for the purposes of this case that the representations were the same to each of the plaintiffs, and that each acted on such representations. The cause of action of each of the plaintiffs, therefore, has the same origin and arises from the same common source. The evidence necessary to sustain

the demand of one will be required for all the others. If one of the plaintiffs is entitled to recover, then all of them are. The plaintiffs must all succeed or all fail. There is no controversy as to the amount due each plaintiff. There is no antagonism between the plaintiffs. The certificates of stock are annexed to the petition and speak for themselves. The defendants cannot question the legality of the stock purchased by the plaintiffs, nor can the corporation do so.

"The only issue presented, therefore, between the plaintiffs and the defendants, is the alleged artifice and fraud practiced on the plaintiffs by the agent of the defendants. There has been no sufficient reason suggested, and none can be suggested, why there should be as many separate trials of that single issue as there are plaintiffs in this suit. In Gill v. City of Lake Charles, 119 La. 17, 43 So. 897, Mr. Justice Provosty commented on the fact that the Code of Practice makes no provision for determining when parties may or may not be joined either as plaintiffs or defendants; and after a review of many authorities he said:

" 'We have to be guided in that regard by the well-settled rules of pleading as found in the books of common law, according to which a large discretion is left to the court; the aim being to avoid a multiplicity of suits, while not permitting parties to be joined who have not a common interest. * * *'

"And this appears to be the rule followed in all of the cases we have been able to find. Where there is a common interest

in the subject-matter of the suit, and where the cause of action arises from the same common source, joinder will be permitted; otherwise it will not. Holzab v. New Orleans & C. R. Co., 38 La.Ann. [185] 187, 58 Am.Rep. 177; Cane v. Sewall, 34 La.Ann. 1096; Conery v. Coons, 33 La.Ann. [372] 373; Riggs & Bro. v. Bell, 39 La.Ann. [1030] 1031, 3 So. 183."

See, also, Morgan's Louisiana and Texas Ry. Co. v. Godchaux Sugars, Inc., 3 La. App. 236; Gaines v. Chew et al., 2 How. 619, 11 L.Ed. 402; Castille v. Refinery & Railroad Co. et al., 48 La.Ann. 322, 19 So. 332.

In the case of Planters' Oil Mill v. Monroe Waterworks & Light Co., 52 La.Ann. 1243, 27 So. 684, 686, the court said:

"A state of facts is alleged from which, according to the theory of the petition, the obligation in solido of the two defendants results. If, as the consequence of acts of commission or omission, the solidary liability of two or more persons to another arises, such persons may be sued at one and the same time in the same action for a judgment in solido against them."

Learned counsel for the defendants refer us to the case of McGee v. Collins et al., 156 La. 291, 301, 100 So. 430, 34 A.L.R. 336, where the plaintiff sued 18 insurance companies for damages for libel and 29 agents and solicitors for damages for slander. The court reached the conclusion that the printed publication of the insurance companies, or the alleged libel, was a separate and distinct cause of action from the alleged defamatory utterances of the 29 agents and solicitors, and sustained both the exception of misjoinder of parties defendant, as well as the exception of no cause of action, concluding that the allegations showed that plaintiff was equally at fault, and applied the doctrine of provoked libel, dismissing the entire suit. It is quite clear that these were two separate and distinct, or independent alleged quasi offenses, and the issues in the libel matter would be different from the issues in the slander action. Therefore, this authority is not apposite here.

█ It is conceded by all parties litigant that the petition states a cause of action against the defendants George E. Wiegand and Charles O. Marionneaux in tort.

As to the defendant Lumber Company, it is evident that the cause of action against this defendant is likewise in tort. The petition alleges in article VIII that the three defendants "prepared and presented to the plaintiff * * * false and incorrect copies of railroad freight bills * * * and prepared and delivered to plaintiff incorrect export declarations," and that this practice of the three defendants "for the purposes hereinafter set forth, was planned and systematically carried out by the defendants." Article IX alleges that because of said false representations made by the three defendants, plaintiff made an undercharge of freight. Article XI alleges that the preparation and presentation to plaintiff of said false copies of railroad freight bills and false export declarations "by the defendants Wiegand Marionneaux Lumber Co., Inc., George E. Wiegand, and Charles O. Marionneaux was done with the purpose and · intent of securing transportation at less than the lawfully established rates, for

the benefit of the Wiegand Marionneaux Lumber Co., Inc., and for the ultimate benefit of defendants George E. Wiegand and Charles O. Marionneaux." It thus appears that the Lumber Company, wholly independent of any contract which may have preceded the alleged wrongdoing, planned and actually took part with the other two defendants in a deliberate scheme to defraud the plaintiff of its revenues.

It is true that the petition does incidentally state also a cause of action against the Lumber Company in contract, as it is alleged (article VII) that the Lumber Company made the various shipments "pursuant to its several freight engagements." The tort complained of against the Lumber Company in deliberately falsifying railroad weight certificates in order to deceive the plaintiff as to the weights of the shipments does not in any way depend upon, nor is it connected with the freight engagements which preceded the alleged wrong. The situation would not have been one bit different had there been no prior contract of affreightment. This is best illustrated by considering the case against Mr. Wiegand and Mr. Marionneaux; the action against them is clearly in tort; all of these defendants are said to have concurrently participated in the scheme to defraud, exactly in the same manner and exactly to the same extent; the individual defendants were not parties to the freight engagement. It was necessary for the plaintiff to make allegations with reference to the contracts of affreightment for two purposes: First, to show how the imposition, deception, and fraud were perpetrated in securing the plaintiff's services at a rate lower than the lawful rate; and, second, to establish the quantum of damages or loss. It is only because the defendants construe the petition against the Lumber Company as an action for the balance due on the contracts of the affreightment that they arrive at the conclusion that the suit against the Lumber Company is an action ex contractu.

The sole and only issue before the court as against all of the defendants is whether or not they intentionally presented false railroad freight bills and incorrect export declarations to the plaintiff, as a part of a systematic plan to secure transportation at less than the lawful established rates. It is evident that the causes of action against the defendants is of cognate origin and that they have a common interest in the matter to be adjudged, which can be decided in one judgment, thereby avoiding a multiplicity of lawsuits.

It is our opinion that the trial judge erroneously sustained the exception of misjoinder of parties defendant.

The trial judge did not pass upon the exceptions of no right or cause of action, and we shall not consider them at this time.

For the reasons assigned, the judgment appealed from is annulled and set aside, and the case is remanded to the district court for further proceedings, according to law and consistent with the views herein expressed; defendants to pay the costs of this appeal.