TALIAFERRO, Judge.
Defendant, with his right fist, violently struck plaintiff about the left eye and for pain and physical injuries accredited to the effects of the blow, is being sued by him for a large amount in damages.
Plaintiff alleged that on the morning of October 9, 1950, accompanied ¡by another Negro, Marvin Gray, near the intersection of Common Street and Cotton Street, in the City of Shreveport, Louisiana, the defendant, Thurston E. Baggett, a white man, going in the opposite direction, without cause or provocation, delivered the blow, above referred to, which was of such force as to knock him from the sidewalk onto the surface of the paved street, temporarily unconscious; that the blow incised the flesh on the left side of the head, im *679 mediately at his left temple, and to the rear of the left eye. The damages sought consist of alleged loss of salary for three weeks, doctors’ bills, disfigurement of face at locus of the wound, injury to eye, humiliation and embarrassment, pain and suffering.
Defendant admits knocking plaintiff down at the time and place alleged, but.pleads justification (self-defense) for so doing. He alleged that as he traveled northwesterly along the east side of Common Street, a few feet from its intersection with Cotton Street he met two Negroes (unknown to him, but afterward identified as plaintiff and Gray) walking abreast; that as the sidewalk is only three (3) feet wide, he stepped to his right side, but not off of the walk, to allow the Negroes to pass; that as they passed him, plaintiff, who was nearest to him, without cause or provocation, “bumped defendant herein off of said sidewalk by violently pushing” him with his left shoulder; that when he, defendant, regained erect position, 'from which he had been almost knocked to his knees by the shove given him by Charley Ashley, defendant looked at Charley Ashley in a stern manner, but said nothing; that then Charley Ashley, without further warning, “took a violent swing with his right hand toward defendant’s head,” the intended'blow striking defendant’s right hand only; that instantly, in self defense and in order to protect himself from further blows from plaintiff, he did strike him one blow with his folded right hand, as alleged.
Plaintiff additionally alleged that immediately following said assaults and batteries, Marvin Gray drew from his pocket and opened a large knife with which he threatened to cut defendant, but on being admonished not to do so, he closed it and returned it to his pocket without attempting to use it.
Plaintiff’s demand was rejected by the Court and his suit dismissed.
The case tenders questions of fact and one of law. The pivotal question is whether the admitted assault and battery by defendant upon the plaintiff was justified, in law, under the facts and circumstances then existing. Of course, if those facts and circumstances were as contended by defendant, he should not be cast in damages for striking plaintiff. If plaintiff’s, position and contentions are found to be borne out by the record, a different result, of course, will follow.
Plaintiff testified that as he and Gray walked southward on 'Common Street, talking, he was on the inside, or at Gray’s left, but as the intersection was neared, Gray stepped out in front of him; that he (plaintiff) looked for traffic on Cotton Street (which runs easterly and westerly), and then testified: “When I turned my head I didn’t know nothing else until Marvin Gray was trying to get me up”, at which time, he says, defendant was “going on down (northerly) the street”. He did not then know who it was that hit him, nor why; in fact, did not even see defendant before being hit. This cannqt possibly be true.
The testimony of Marvin Gray.does not dovetail with that of plaintiff. We quote his version of the facts of the assault and battery, to wit: “A. And we was talking, coming to this intersection, and just before we met he almost stopped and stood in front of Mr. Ashley, and when he passed me Mr. Ashley, fell. I didn’t know what happened. I turned around to pick Mr. Ashley up. Mr. Baggett had backed off and went on down the Street. And I got him up. I had stepped just ahead of Mr. Ashley.
“Q. You had stepped just ahead of Charley Ashley so that Mr. Baggett could pass is that right? A. Yes, sir.
“Q. And the first thing you knew Charley Ashley was on the ground, is that what you say? A. Yes, sir.”
Contrary to plaintiff’s testimony, that of Gray, quoted above, shows that immediately prior to delivery of the blow, defendant “almost stopped and stood in front of Ashley”. If this be true, there was no reason whatever for Ashley not knowing more than he says he does as to who struck him, and why.
If defendant had no cause whatever to become belligerent, or if he became so simply because the Negroes were taking more than their share of the sidewalk (he know *680 ing neither), why would he ¡pass up Gray to strike plaintiff? The answer to this quaere is not left to conj ecture.
Defendant’s versions of the facts of the trouble are' not entirely consistent. They are to some extent at variance with the facts as set up in his answer. He related the facts several times. However, a correct composite of his testimony on the subject, we deduce, is this: that as he and the Negroes approached on the narrow sidewalk, he drew as far as possible to his right side so as to be able to pass if the Negroes went into single file; that they did not do so, and as they passed him abreast plaintiff purposely jostled or pushed him so forcefully that he had to step from the sidewalk onto the muddy terrain adjoining, and perhaps slightly lost balance; that he quickly regained the sidewalk and was then struck at by plaintiff, but the blow went wild, save for injury to a finger of the right hand; that at this juncture he delivered the blow that eliminated plaintiff from the fray.
We believe defendant in error in testifying that plaintiff struck at him, but we are convinced that he did something that provoked defendant to such resentfulness as to try to even scores in the manner he admits. Since plaintiff and Gray both deny that any word was uttered or act was done to warrant the assault by defendant, and since we are certain that their testimony on this important phase of the case is untrue, we. have to determine, if we can, what really happened to cause the assault. We are relegated to one course, and that is to accept, as true, what defendant says, save as to what he says about plaintiff striking at him. To do this does not affect the legal aspects of the case, nor its outcome.-
We doubt seriously that the witness, Gray, displayed an open knife after plaintiff was knocked down. Whether he did so or not, as we view the case, is unimportant to a correct determination thereof.
It is absurd to contend that a man of defendant’s age and long record as a peaceful citizen, would deliberately and without some cause or provocation, strike down a pedestrian just for the fun of doing so, and that is what occurred, according to plaintiff and Gray. The probative worth of defendant’s testimony on the pivotal issue in the case becomes the more pronounced since plaintiff and his main witness are positive no provocation whatever existed for him doing what he did.
We are further convinced that plaintiff was struck by defendant immediately after he was forced from the sidewalk. The location of the blow on the left side of plaintiff’s face indicates that defendant was at the time the blow was delivered, to some extent on plaintiff’s left side. It is unlikely that defendant (as plaintiff was moving all the while) could have gotten in front of him after being shoved from the sidewalk, as he says. ■
Of course, one cannot reasonably close his eyes to the silent, though obvious fact that back of the whole affair difference in color finds substantial place.
The foregoing conclusion poses the legal proposition: Is a man who, without cause or provocation, has been intentionally jostled or forcefully shoved from a sidewalk by another man, as he passes, to be exonerated from liability in civil damages, that are a sequence of assault and battery with the fists, upon the offender, on the ground that the offender was the aggressor?
After a close study, of the pertinent jurisprudence of this state on the subject, we experience no difficulty in answering the posed question in the affirmative.
Tlie law lays a heavy hand upon him who would violate the fights of others by act or deed that in its ordinary and usual significance would be calculated to arouse the anger and resentment of a person ordinarily constituted; and so long as the offended one, at the time of the offense, employs only sufficient force to repel that which has been done to- him, or to render further attack from his adversary impossible, the offender is without right to have the other party respond in damages that flow from the repulsive force thus employed. The general rule is that “one who is himself in fault cannot recover damages for a wrong resulting from such *681 fault, although the .party inflicting the injury was not justified under the law.” See Wade v. Gennaro, La.App., 8 So.2d 561, 562, and cases therein cited.
This principle has .been many times applied in appropriate cases. See McGee v. Collins, 156 La. 291, 100 So. 430, 34 A.L.R. 336.
The latest case in this state, dealing with the principle, is that of Smith v. Clemmons, Sheriff, La.App., 48 So.2d 813, decided by the First Circuit. The Court in that case quoted from Britt v. Merritt, La.App., 45 So.2d 902-905, decided by this Court, wherein the same principle was involved.
In such a case the defendant in the civil action may not be guiltless under the criminal law, yet he cannot 'be held liable in damages in a civil action arising from the same state of facts.
In the present case it is apropos to note that the defendant was charged criminally in the City Court of Shreveport for assault and battery upon the plaintiff, and, after trial, was acquitted.
Therefore, for the reasons herein assigned, the judgment from which appealed, is affirmed with costs.