71 So.2d 410 (1954)
BROWN et al.
v.
LAMBERT et al.
No. 3816.
Court of Appeal of Louisiana, First Circuit.
March 22, 1954.
*411 Harry Kron, Jr., Kermit B. Guidroz, Baton Rouge, for appellants.
Ponder & Ponder, Amite, Joseph M. Blache, Jr., Hammond, for appellees.
CAVANAUGH, Judge.
Plaintiffs, husband and wife, sue the defendants, Jonas Lambert, Willard Aydell, John Schexnayder, Scofield Lobell, Berlin Roddy and Felix D. Perrilloux, individually and in solido for damages for personal injuries, physical pain and suffering to Sidney O. Brown, for loss of time and medical expenses, and the claim of his wife, Paula Rae Brown, for damages to herself as the result of fright and nervousness. The claim of the plaintiff, Sidney O. Brown, is for the sum of $20,754, and that of his wife, Paula Rae Brown, is for the sum of $4,000. The cause of action is predicated upon an assault and battery committed by defendants upon the body of Sidney O. Brown in the presence of his wife at a night club owned and operated by defendant, Scofield Lobell, in what is known as the French Settlement in the Parish of Livingston.
Plaintiffs and a number of their friends went to this night club either on the evening of September 3, 1949, or September 4, 1949, for the purpose of entertainment. The place of business operated by the defendant, Scofield Lobell, consisted of a dance hall, a grocery store, and a bar. The plaintiffs had attended a birthday celebration at the home of Mrs. Brown's mother, Mrs. Guitreau, and arrived at the club about 5:30 in the afternoon for the purpose of dining and dancing. A number of their friends accompanied them, and when they arrived there, some of the defendants were already seated at tables and dancing. Plaintiff, Sidney O. Brown, according to the evidence in the case, consumed at least a half a dozen or more bottles of beer between the time of his arrival about 5:30 in the afternoon until the affray which occurred a short time before or after midnight. He and his wife and some of the guests who accompanied them, occupied a table adjoining the men's rest room. Plaintiff, Sidney O. Brown, was seated at this table with his back either against the door to this rest room or in close proximity to it, and a guest of the club in going from the dance hall to this rest room had to pass through this door. It was necessary for the plaintiff, Sidney O. Brown, to get up and move his chair to permit ingress and egress through this door from the place where he was seated at the corner of his table with his feet out in the aisle of passage to this door. The defendant, Berlin Roddy, arrived at the club only a short time before the fight or affray was precipitated, and it was brought about after *412 Roddy had gone through this door into the rest room and was coming back into the dance hall. Plaintiff's claim that Roddy had stumbled over Sidney O. Brown's feet once or twice and Brown remonstrated with him, and Roddy contends that Brown put his feet against the door and tried to keep him from reentering the hall. At any rate, this was the beginning of the disturbance, out of which plaintiff suffered the black eyes, bruised face, fracture of the sinus, and other injuries about which he complains.
There are 279 pages of evidence contained in the transcript of the testimony, and it is so conflicting and irreconcilable that it has been quite a difficult task to determine whether the plaintiff, Sidney O. Brown, precipitated the fight or whether it was brought on by the defendant, Berlin Roddy. We have carefully studied the testimony to determine whether or not the Trial Judge who decided the case had committed any manifest error in his analysis of the testimony. The judge who decided the case did not hear the evidence and see the witnesses at the time it was given, and for that reason, we have given the utmost study to the testimony to determine whether or not appellants are entitled to a reversal here. Our analysis of the testimony is the same as that of the Judge who decided the case, and we adopt his finding of fact and his application of the law, which is as follows:
"From the evidence as the Court appreciates it, the plaintiffs and a group of friends went to the Moonlight Inn on the night of September 3rd or 4ththe plaintiffs allege September 3rd, and the defendants contend it was September 4thto dine and dance. It seems that Mr. Brown had been to a party at his mother-in-law's and about five or five thirty in the afternoon he and his group went to the Moonlight Inn. This is a night club where intoxicating liquors are sold and people dance. The testimony is uncontradicted that they stayed at the night club until after the alleged fight which took place around midnight. During that time considerable drinking was indulged in by Mr. Brown and some of the people in his party. He testifies he only had six or seven beers, but the fact remains that he was indulging in drinking intoxicating liquors and we doubt that he realized how many he did consume.
"At about eleven o'clock the defendant Berlin Roddy came in and passed by the table of the plaintiff in going to the rest room. The testimony is conflicting as to how many times he passed and as to what transpired. The plaintiff contends that Roddy passed several times and each time he slammed the door against him in going in and out and stepped on his feet. The testimony of Roddy is that Brown stuck his feet out in the aisle and tripped him and he remonstrated with him. At any rate, it caused a dissension and resulted in some licks being passed. According to Roddy, Brown came up and hit him from behind, and according to Brown, Roddy hit him when he wasn't looking and wasn't expecting it.
"At this time Scofield Lobell, the proprietor of the place, came in and ordered Roddy to go out from the dance hall and stand behind the bar, which he did. During the major portion of this time, the defendants Jonas Lambert, Willard Aydell, Felix Perilloux and John Schexnayder, were at another table drinking and dancing. When the fight between Roddy and Brown started, Lambert seemed to have run over and caught Brown and was holding him. According to Brown he not only held him but threw him on the floor and three of the defendants held his arms and feet while Lambert beat him for an hour. It may have seemed an hour to the plaintiff but the Court is satisfied that this fight, like most others, wound up in a very few minutes. According to the defendants, Lambert held Brown and finally released him after Roddy had left the dance hall, then Brown hit Lambert and Lambert in turn started fighting him, and unquestionably knocked him down. As to how many licks he hit him, it is hard to determine from the testimony. At this time Mrs. Brown asked them to stop fighting and beating her husband, and Lambert stopped *413 and he and John Schexnayder carried Brown out to his car.
"The defendants Jonas Lambert, John Schexnayder, Felix Perilloux, and Willard Aydell and their wives arrived at the Moonlight Inn, sometimes called the `Y', at around seven or eight o'clock. They secured a table and some of them were drinking high balls and all of them were dancing until the music stopped. Their contention is that Jonas Lambert was helping Scofield Lobell to preserve order and stop the fight between Roddy and Brown.
"The testimony is very conflicting, the plaintiff and his witnesses testifying to one set of facts and the defendants and their witnesses testifying to another. Most of the men in both groups were drinking either beer or whiskey. There is no motive that the Court can find which would induce the defendants to conspire to beat up the plaintiff. Men don't beat up a person without some reason, and most of the parties on both sides were related directly or indirectly to one another. It appears to the Court that the fight started and was continued as a result of too much indulgence in alcohol.
"All of the witnesses appear to the Court to be of equal credibility. The court has no reason to doubt the testimony of any of the witnesses but it is apparent that one side or the other is not telling the truth. The Court is forced to take into consideration all the testimony and the physical facts in order to try and reconcile the discrepancies in the testimony if possible. This we have been unable to do except for one or two instances which will be commented on later in this opinion.
"The burden of proof is on the plaintiff to make out his case by a preponderance of evidence. This the Court finds the plaintiff failed to do because the testimony is so conflicting that the Court is unable to determine who started the fight.
"The plaintiff in his brief relies a great deal upon the doctrine of res ipsa loquitur. About the only fact that would speak for itself is that Brown unquestionably received a tremendous blow, but this blow was struck by either Roddy or Lambert, which one we are unable to determine. The plaintiff attempts to prove that Roddy went to the bar when Lobell took him in and came back later with a blunt instrument with which he hit the plaintiff. This contention does not appear to the Court to be borne out by the testimony, as most of the witnesses say that Roddy remained in the bar where Lobell took him when he stopped the first fight.
"The fact that the plaintiff was willing to drop the criminal charges against Roddy and that he doesn't seem to have brought any against Lambert, shows that he did not consider the fight as serious as this suit attempts to show. The Court cannot conceive how a man could have consented to dropping criminal charges against a man whom he alleges had beat him up to the extent alleged in the petition.
"This is one of the instances which the Court is unable to reconcile with the testimony of the plaintiff and casts a doubt on the burden of proof.
"There is no evidence of any collusion between the defendants or any conspiracy to beat up the plaintiff, Brown. The second fight seems to have started spontaneously, one growing out of the other, and but for the severity of the injuries about his head which the plaintiff suffered, we are satisfied that the Judge who heard the case would have dismissed it long ago. However, the plaintiff still carries the burden of proving his case and the Court, after reading the testimony is satisfied that he has not made out his case to the satisfaction of the Court.
"The defendant Scofield Lobell never engaged in the fight and he is brought into the case as proprietor of the place on the theory that the proprietor of any public house of entertainment as a result of an implied contract has the duty of exercising reasonable care to protect guests both in person and property from injury at the hands of a fellow guest or guests. Dehart v. Travelers Insurance Co., La.App., 10 *414 So.2d 597. However, the Court has also held that the proprietor is not the insurer of the safety of his guests and he only owes reasonable care to protect them. It seems to the Court that Mr. Lobell exercised that care when he went in and stopped the first fight and removed one of the participants from the scene, expecting the situation to quiet down. If, thereafter, the plaintiff started another fight as a result of which he received the injuries complained of, I do not believe that Mr. Lobell would be liable.
"The plaintiff, Mrs. Paula Rae Brown, wife of Sidney O. Brown, has asked for damages to herself as the result of fright and nervousness caused by the affray. The testimony shows that she had presence of mind enough to request the defendants to take her husband out to the car, which they did, and she didn't exhibit any undue excitement other than that which would naturally come as the result of any fight. In addition, she has returned to the Moonlight Inn several times since this fight and we can't conceive of how she could do that and run the risk of maybe witnessing another fight if she had been so upset by the fight which is the basis of this suit."
The plaintiffs-appellants have pointed out here slight inaccuracies and contradictions in some of the testimony adduced by the defendants. The same thing can be said of plaintiffs' witnesses, and especially the plaintiff, Sidney O. Brown, when he testifies as to how the brawl or fracas started between him and the defendant, Roddy. He first testified:
"I was sitting against the door that led to the back yard, to the rest room and there was another door in the front that led out side to the rest room and every time someone would come to that door, I had to get up and let them pass. I would get up and not say a word to no one and at 11:00 o'clock, maybe a little after, Burlon Roddy came in and kept his eye on me all the time. He looked at me all the time he was there and he went out the door and pulled the door * * Burlon Roddy * * * pulled the door against me and my feet and went to the rest room and came back and pulled the door against me again and then went to dance one time and came back and stepped on my foot and I told him not to do that any more."
This witness further states that after he pulled the door against him, he swung at him and that plaintiff ran over a chair and fell on the floor and Jonas Lambert came and "started beating me on the head and I noticed Felix Perrilloux had my feet in the air; Willie Aydell was holding my arm and John Schexnayder was there too and I did not know what happened as I was uncomfortable. Someone brought me outside."
Further in the testimony, in telling how the fight was going on between him and Roddy, he stated:
"I leaned over my wife and I got up and we started swinging at each other."
In one place the plaintiff claims he fell over the chair when Roddy first swung at him, and at that time defendant, Jonas Lambert, and the other defendants came up and commenced working him over.
We quote from the testimony of Mrs. Brown, who was sitting with her husband at the table, to show the inaccuracies and inconsistencies of her view of how the fight was precipitated from that of her husband:
"We were sitting at the table up against the door that led to the men's room and every time someone would have to pass, Sidney would let them pass. Berlin Roddy passed two or three times, and the second time he passed the door, he slammed the door against Sidney and stepped on his feet."
Later she was asked how Roddy struck Brown, or in what manner he caused Brown to fall on her, and she said:
"Before Sidney was standing up good to pull his chair out, he pushed *415 him * * * with his arm and Sidney came over on me."
And then she said:
"Well, they got into a fight swinging both at each other, and Sidney stumbled over the chair and Jonas Lambert, Willard Aydell, Felix Perrilloux and John Schexnayder came over there and they were fighting with Sidney."
Was Brown justified in obstructing the passage in and to the rest room by other paid guests? Was he doing an act calculated to bring on a difficulty? If he blocked the passage to the rest room, he should have been expected to move out of the way or suffer the slight inconvenience of moving each time the door was opened or closed.
The provocation does not have to be by a blow of the offender.
"Where a plaintiff provokes a difficulty by insults, abuse, threats, or other conduct calculated to arouse resentment or fear on the part of the defendant, the plaintiff cannot recover for an assault and battery, although the defendant may not have been justified in law in his conduct. Finkelstein v. Nailhaus, La.App., 151 So. 686; Walsh v. Schriner, La.App., 168 So. 345; Massett v. Keff, 116 La. 1107, 41 So. 330; Johns v. Brinker, 30 La.Ann. 241." Landry v. Himel, La. App., 176 So. 627, 629.
"The law lays a heavy hand upon him who would violate the rights of others by act or deed that in its ordinary and usual significance would be calculated to arouse the anger and resentment of a person ordinarily constituted; and so long as the offended one, at the time of the offense, employs only sufficient force to repel that which has been done to him, or to render further attack from his adversary impossible, the offender is without right to have the other party respond in damages that flow from the repulsive force thus employed. The general rule is that `one who is himself in fault cannot recover damages for a wrong resulting from such fault, although the party inflicting the injury was not justified under the law.' See Wade v. Gennaro, La.App., 8 So.2d 561, 562, and cases therein cited.
"This principle has been many times applied in appropriate cases. See McGee v. Collins, 156 La. 291, 100 So. 430, 34 A.L.R. 336." Ashley v. Baggett, La.App., 53 So.2d 678, 680.
We believe that the evidence preponderates as found by the Trial Judge that plaintiff, Brown, was knocked down by defendant, Berlin Roddy or Lambert, and that the defendant, Scofield Lobell, and the other defendants sued herein made some attempt to stop the fight and affray by separating defendant, Roddy, and plaintiff, Brown, because Roddy was carried back into the barroom and did not return to the dance hall any more. If plaintiff, Brown, had desired to engage no further in the brawl, he should not have struck Jonas Lambert when he released him, which precipitated the second fight and the subduing of the plaintiff, who at that time seemed uncontrollable.
It is our opinion that defendant, Scofield Lobell, did what he could do to stop the fight by taking one of the combatants back behind the bar and that Jonas Lambert's act in the matter was in attempting to restore order and quiet the plaintiff, Brown.
This record clearly reflects that plaintiff received two or three severe blows either from the fist of Roddy or from the fist of Jonas Lambert, and plaintiff delivered several blows to each of them. We agree with the Trial Judge that this fight did not last for as long a time as plaintiffs' witnesses say it did.
The evidence is so conflicting as to who was the aggressor, and the burden of proof being on the plaintiffs, they have failed to prove their case by a fair preponderance of the evidence. The judgment is affirmed.